JS 44  (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Aimee Klopp

**DEFENDANTS**

TAIT Towers Manufacturing, LLC d/b/a TAIT Towers

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Lancaster
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Holly W. Smith Esq. | Console Mattiacci Law
1525 Locust Street, 9th flr. Philadelphia, PA 19102
(215) 545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability    ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander    Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability    Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine    ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle    **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability    ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury    ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice    ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY**    **CIVIL RIGHTS**    **PRISONER PETITIONS** | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment    ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations    ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment    ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other    **Other:**    ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| | ☐ 448 Education    ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding    ☐ 2  Removed from State Court    ☐ 3  Remanded from Appellate Court    ☐ 4  Reinstated or Reopened    ☐ 5  Transferred from Another District *(specify)*    ☐ 6  Multidistrict Litigation - Transfer    ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e, et seq. and 43 P.S. § 951, et seq.

Brief description of cause:
Plaintiff was discriminated and retaliated against based on her sex in violation of federal and state law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE
04/28/2026

SIGNATURE OF ATTORNEY OF RECORD
*Holly Smith*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Lititz, PA _____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                                                          Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?         Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?                                                                                                                                            Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?                    Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.*   ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☒ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.*   ***Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
   _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Aimee Klopp | : | CIVIL ACTION |
| | : | |
| v. | : | |
| TAIT Towers Manufacturing, LLC d/b/a | : | |
| TAIT Towers | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
      and Human Services denying plaintiff Social Security Benefits.                                      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
      exposure to asbestos.                                                                                               ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
      commonly referred to as complex and that need special or intense management by
      the court.  (See reverse side of this form for a detailed explanation of special
      management cases.)                                                                                               ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.              (X)

| | | |
|---|---|---|
| 04/28/2026 | *Holly Smith* | Plaintiff, Aimee Klopp |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 545-7676 | (215) 689-4137 | Hollysmith@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AIMEE KLOPP**<br>Manheim, PA 17545 | Civil Action No. _____ |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMANDED** |
| **TAIT TOWERS MANUFACTURING,<br>LLC d/b/a TAIT TOWERS**<br>401 West Lincoln Avenue<br>Lititz, PA 17543 | |
| *Defendant.* | |

## I.   INTRODUCTION

Plaintiff, Aimee Klopp, brings this action against her former employer, Tait Towers Manufacturing, LLC d/b/a Tait Towers ("Defendant"), for discriminating against Plaintiff based upon her sex (female) and retaliating against her because of her complaints of sex discrimination. Defendant's unlawful conduct was in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"). Plaintiff seeks damages, including economic loss, compensatory damages, punitive damages, injunctive relief, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II.   PARTIES

1.   Plaintiff, Aimee Klopp, is an individual and a citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Manheim, PA.

2.   Plaintiff is female.

3. Defendant Tait Towers Manufacturing, LLC d/b/a Tait Towers is a limited liability company incorporated in the state of Delaware, is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania.

4. Defendant Tait Towers Manufacturing, LLC d/b/a Tait Towers maintains principal places of business at 401 West Lincoln Avenue, Lititz, PA 17543 and 7 Winfield Drive, Lititz, PA 17543.

5. At all times material hereto, Plaintiff worked at Defendant's business office located at 7 Winfield Drive, Lititz, PA 17543.

6. At all times material hereto, Defendant employed fifteen (15) or more employees.

7. At all relevant times, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

8. At all relevant times, Defendant acted as an "employer" within the meaning of the statutes forming the basis of this matter.

9. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of the statutes forming the basis of this matter.

## III.   JURISDICTION AND VENUE

10. The causes of action which form the basis of this matter arise under Title VII and the PHRA.

11. This Court has jurisdiction over Count I (Title VII) pursuant to 28 U.S.C. §1331.

12. This Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

13. Venue is proper in this District Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this District.

14.     On or about October 16, 2024, Plaintiff filed a complaint of discrimination with the Pennsylvania Human Relations Commission, complaining of the acts of discrimination alleged herein. That complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto and incorporated herein as Exhibit "1" is a true and correct copy of Plaintiff's agency complaint (with personal identifying information redacted).

15.     On or about January 28, 2026, the EEOC issued to Plaintiff a Notice of Right to Sue pertaining to Plaintiff's agency complaint. Attached hereto as Exhibit "2" is a true and correct copy of that Notice (with personal identifying information redacted).

16.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

17.     Plaintiff was hired by Defendant in or about October 2022.

18.     Plaintiff last held the position of Inbound Staging Technician.

19.     Plaintiff last reported to Dillan Rhinier (male), Head of Assets, North America. Rhinier reported to Avery White (male), Senior Vice President, Global Operations. White reported to Brian Levine (male), President, Projects.

20.     On April 23, 2024, Erik Eisenberger (male), Operations Support Manager, made comments of a sexual nature to Plaintiff. Eisenberger approached Plaintiff while she was alone and commented to her that he was watching "porn" last night and the women were wiggling their toes together and they had their toenails painted and they made thousands of dollars doing that.

21.     Eisenberger served in a management capacity and was in a position superior to Plaintiff.

22.     Plaintiff objected to Eisenberger's comments.

23. Plaintiff made it known that she did not want to engage in Eisenberger's sex-based commentary.

24. Plaintiff rebuffed Eisenberger's sex-based overtures.

25. On April 23, 2024, following the above, in a written report to Defendant's Clear View system, Plaintiff complained of sex discrimination, including sexual harassment, in connection with Eisenberger.

26. On April 23, 2024, following the above, in a conversation with Joey Dastra (male), Group Lead, Plaintiff complained of sex discrimination, including sexual harassment, in connection with Eisenberger. Dastra told Plaintiff that she had to report the sexual harassment to Human Resources and, if she did not, he would report it.

27. On April 23, 2024, following the above, in a conversation with Rhinier, he stated that Dastra told him about the sexual harassment and that Plaintiff needed to report it to Human Resources. He stated that he already spoke with Meghan Miller (female), People Business Partner, regarding the sexual harassment to which Plaintiff was subjected. He stated that Defendant had a zero-tolerance sexual harassment policy.

28. On April 23, 2024, following the above, in a message from Miller, she stated that she wanted to connect Plaintiff with Kevin Williams (male), Director of Global Workplace Relations, regarding Plaintiff's complaint.

29. On April 24, 2024, in messages with Williams, Plaintiff asked to meet with him regarding the incident the day before.

30. In response, Williams stated that he was not available to meet with Plaintiff but that he would have Angie Musser (female), People Operations Specialist, contact her.

31. Monica Ormes (female), Integration Resource Coordinator, told Plaintiff that Eisenberger had sexually harassed her and that she was going to complain to Human Resources

4

about the same. She told Plaintiff that she had sent an email to Mary Fair (female), Human Resources and that they could go to Human Resources together for a meeting.

32. On April 24, 2024, following the above, in a meeting with Fair and Ormes, Ormes and Plaintiff complained of sex discrimination, including sexual harassment, in connection with Eisenberger. They each described the sexually harassing comments and conduct to which they were subjected by Eisenberger. Fair stated that their complaints would be escalated to Williams, and that he would likely open an investigation into the same.

33. Following the above, Defendant placed Eisenberger on leave.

34. On April 26, 2024, in a meeting with Musser, Plaintiff complained of sex discrimination, including sexual harassment, in connection with Eisenberger.

35. On April 29, 2024, in a meeting with Williams, Plaintiff complained of sex discrimination, including sexual harassment, in connection with Eisenberger. Plaintiff provided details of the incident, including the comments that Eisenberger made to her, the date and time of the comments to her by Eisenberger, and where she was when Eisenberger made the comments to her.

36. On May 10, 2024, in messages with Williams, he again asked Plaintiff to confirm the date and time of the comments to her by Eisenberger, which she confirmed.

37. On May 13, 2024, in messages with Williams, he again asked Plaintiff to confirm where she was located when Eisenberger made the comments to her, which she confirmed.

38. Thereafter, Plaintiff received no further communication from Williams or anyone else in Defendant's Human Resources department concerning her sex discrimination complaints or the status of Defendant's investigation into same.

39. In or about June 2024, in a conversation with Rhinier, he unjustly criticized Plaintiff's performance and told her that her pay would be cut for May 24, 2024. The stated reason

5

was that Plaintiff had been talking too much on the clock. Plaintiff received no documentation in connection with the pay cut or her alleged deficiency in work performance.

40.     Following the above, Plaintiff's pay was cut.

41.     Following the above, Rhinier asked Plaintiff to confirm that her pay had been cut in her paycheck.

42.     Male and/or noncomplaining employees did not have their pay cut.

43.     Defendant cut Plaintiff's pay because of her sex and/or her sex discrimination complaints.

44.     When Plaintiff asked Rhinier to use one (1) of her earned paid time off days on June 7, 2024, he initially denied her request without legitimate explanation.

45.     Male and/or noncomplaining employees did not have their paid time off requests denied.

46.     Defendant initially denied Plaintiff's paid time off request because of her sex and/or her sex discrimination complaints.

47.     On June 17, 2024, Ormes told Plaintiff that she saw that Eisenberger had returned to work that day without anyone telling her or Plaintiff that he was returning to work.

48.     On June 17, 2024, following the above, in a phone call with Williams, he stated that Eisenberger had returned to work that day. Plaintiff asked what Defendant was going to do to keep Eisenberger away from Ormes and her, and she stated that they had not been told that he was returning to work. Williams stated that he could not tell Plaintiff details, but that all action was taken short of termination and that Eisenberger would be kept in specific "zones." Plaintiff asked what those "zones" were so that she could avoid them and avoid seeing him or interacting with him. Williams told Plaintiff that he did not know the answer to her question, but that Eisenberger was not allowed in the building where she worked.

6

49.     Plaintiff was never told what "zones" Eisenberger was permitted to be in at Defendant.

50.     On June 21, 2024, in a letter from Williams, entitled Investigation Outcome, he stated that Defendant "will not tolerate inappropriate behavior in the workplace." He stated, without providing any details, "that appropriate action has been taken to ensure such conduct does not repeat itself." He stated that "this matter is culminated and will not be taken any further."

51.     On June 24, 2024, Eisenberger walked into Plaintiff's building and passed within a few feet of her while she was working.

52.     On June 24, 2024, following the above, in messages with Williams and Miller, Plaintiff stated that Eisenberger was in her building that morning and walked past her. She stated that he was only a few feet from her and that the same was upsetting. Plaintiff asked why Eisenberger was in her building when she thought that he was not allowed to be there. Williams stated that he would "investigate and address" and be back in contact with Plaintiff. Miller stated that she and Williams were meeting with "the leadership team over Eisenberger" that afternoon.

53.     On June 24, 2024, following the above, in messages with Miller, she stated that the outcome of the conversation that afternoon was that Eisenberger should not be in Plaintiff's building. She stated that his supervisors would need to "catch up with Eisenberger again, likely tomorrow."

54.     On June 27, 2024, in a meeting with Williams and Miller, Plaintiff complained about the way that Defendant handled her sex discrimination complaints and that the same was upsetting to her. They stated that Eisenberger was remaining employed with Defendant, and they instructed Plaintiff to continue to extend "extreme grace" in the handling of the situation.

7

55. Defendants failure to meaningfully address or remedy the sexual harassment she was subjected to by Eisenberger contributed to the ongoing hostile work environment experienced by Plaintiff at Defendant.

56. Throughout 2024, Plaintiff was subjected to sex-based comments and conduct by Willy Ramos (male), Group Lead, Hoist Department, including, without limitation:

    a. Ramos sent a message to Plaintiff over Defendant's messaging system stating "you looked beautiful last night."

    b. Ramos sent a message to Plaintiff over Defendant's messaging system asking for a hug.

    c. Ramos sent messages to Plaintiff over Defendant's messaging system commenting about the "energy" he and Plaintiff made in the presence of one another.

    d. Ramos would routinely show up at Plaintiff's work area unannounced and without any legitimate business purpose looking for her.

    e. Ramos would routinely wait in the parking lot for Plaintiff at the time she was completing her shifts.

    f. On one occasion, Ramos backed his car behind Plaintiff's in the parking lot to give her a "gift."

    g. Ramos falsely told employees of Defendant that he and Plaintiff slept together.

57. Ramos served in a management capacity and was in a position superior to Plaintiff.

58. Plaintiff objected to Ramos' comments.

59. Plaintiff made it known that she did not want to engage in Ramos' sex-based commentary.

60.     Plaintiff rebuffed Ramos' sex-based overtures.

61.     On or about December 5, 2024, during a meeting with Williams, Plaintiff complained of sex discrimination, including sexual harassment, in connection with Ramos' comments and conduct towards her.

62.     During this meeting, Plaintiff told Williams that she was hesitant to report Ramos' comments and conduct because she was fearful of ongoing retaliation and because of the way Defendant mishandled her complaints against Eisenberger.

63.     Upon information and belief, other employees of Defendant observed and complained of Ramos' comments and conduct towards Plaintiff.

64.     Following the above, Ramos was placed on leave.

65.     Following Plaintiff's sex discrimination complaint, during a meeting with Williams, Plaintiff was informed that Ramos would remain employed at Defendant.

66.     Plaintiff objected to Ramos remaining employed at Defendant and stated that she felt uncomfortable being around him and was concerned that his comments and conduct would persist.

67.     In response, Williams told Plaintiff that they would walk "hand in hand" through the situation, that "diamonds are formed under pressure," and suggested that each morning when she brushed her teeth, she mentally prepare herself to face Ramos at work.

68.     Following Plaintiff's complaints of sex discrimination, including sexual harassment, against Ramos, he was instructed not to contact Plaintiff.

69.     Thereafter, Ramos continued attempting to contact Plaintiff, including through social media.

9

70. Defendant's failure to meaningfully address or remedy the sexual harassment she was subjected to by Ramos contributed to the ongoing hostile work environment experienced by Plaintiff at Defendant.

71. On October 14, 2025, as the result of the ongoing sex discrimination and retaliation she was experiencing at Defendant, Plaintiff resigned her employment at Defendant.

72. Plaintiff resigned because she could no longer work at Defendant due to the sex discrimination and retaliation she endured.

73. Defendant failed to remedy or prevent the sex discrimination and retaliation to which Plaintiff was subjected.

74. Plaintiff's sex was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Plaintiff as alleged herein.

75. Plaintiff's complaints of sex discrimination were a motivating and/or determinative factor in connection with Defendant's retaliatory treatment of Plaintiff as alleged herein.

76. Defendant's discriminatory and retaliatory conduct, as alleged herein, was severe or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

77. Defendant subjected Plaintiff to a hostile work environment because of her sex and/or her sex discrimination complaints.

78. Defendant engages in a pattern and practice of discriminating against female employees, including Plaintiff.

79. Defendant engages in a pattern and practice of retaliating against employees who complain of unlawful discrimination, including Plaintiff.

10

80.    As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

81.    Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

82.    The conduct of Defendant, as set forth above, was outrageous and warrants the imposition of punitive damages.

## <u>COUNT I - TITLE VII</u>

83.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

84.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

85.    Said violations were intentional and done with malice and/or reckless indifference to Plaintiff's federally protected rights, warranting the imposition of punitive damages.

86.    As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. damages including economic loss, emotional distress, humiliation, and other injuries, and has incurred attorneys' fees and costs.

87.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless this Court grants the relief requested herein.

88.    No previous application has been made for the relief requested herein.

## COUNT II – PHRA

89.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

90.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PHRA.

91.    As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. damages including economic loss, emotional distress, humiliation, and other injuries, and has incurred attorneys' fees and costs.

92.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless this Court grants the relief requested herein.

93.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

a.    declaring the acts and practices complained of herein to be in violation of Title VII;

b.    declaring the acts and practices complained of herein to be in violation of the PHRA;

c.    entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

d.    enjoining and permanently restraining the violations alleged herein;

12

e.    awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

f.    awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional distress, mental anguish, humiliation, embarrassment, loss of self-esteem, and loss of life's pleasures;

g.    awarding punitive damages to Plaintiff under Title VII;

h.    awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees;

i.    awarding pre-judgment and post-judgment interest as allowed by law; and

j.    granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully submitted,

**CONSOLE MATTIACCI LAW LLC**

By: _____

HOLLY W. SMITH, ESQ.
KEVIN CONSOLE, ESQ.
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
Phone: (215) 545-7676
hollysmith@consolelaw.com
kevinconsole@consolelaw.com

Dated: 4/28/2026                          *Attorneys for Plaintiff*

13